UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
NOV 7 2018
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

ANATOLIY SIGAL,

                Petitioner,

    v.

JEFFREY J. SEARLS,

                Respondent.

**DECISION AND ORDER**

1:18-CV-00389 EAW

## **INTRODUCTION**

Petitioner Anatoly Sigal ("Petitioner"), an immigration detainee currently detained at the Buffalo Federal Detention Facility in Batavia, New York, seeks a *writ of habeas corpus* pursuant to 28 U.S.C. § 2241. (Dkt. 1). Petitioner argues that his continued detention is unconstitutional and seeks immediate release, either on his own recognizance or under bond. (*Id.* at ¶¶ 36-37). In connection with the Petition, Petitioner also filed a motion seeking an evidentiary hearing. (Dkt. 12). For the reasons discussed below, Petitioner's motion for an evidentiary hearing is denied and his Petition is denied and dismissed.

## **PROCEDURAL BACKGROUND**

Petitioner commenced the instant action on March 23, 2018. (Dkt. 1). Petitioner filed a supplement to his Petition on June 15, 2018. (Dkt. 4). Pursuant to the Court's Order, Respondent filed an Answer and memorandum of law in opposition to the Petition on July 16, 2018. (Dkt. 9; Dkt. 10; Dkt. 11).

On August 3, 2018, Petitioner moved for an evidentiary hearing. (Dkt. 12). Respondent filed opposition papers on August 21, 2018. (Dkt. 14; Dkt. 15). Oral argument was held before the undersigned on September 18, 2018. (Dkt. 17).

## FACTUAL BACKGROUND

Petitioner is a native and citizen of Ukraine. (Dkt. 9-1 at ¶ 5). He was born on August 28, 1988, and is ethnically Jewish and an adherent to the Jewish faith. (Dkt. 1 at ¶ 12). Petitioner entered the United States as a V2 nonimmigrant on May 12, 2006, in New York City, with authorization to remain in the United States for a temporary two-year period not to exceed May 11, 2008. (Dkt. 9-1 at ¶ 5). Petitioner's nonimmigrant authorization was subsequently extended until November 18, 2012. (*Id*). Petitioner acknowledges that he remained in the United States beyond his period of authorized stay. (Dkt. 1 at ¶ 13).

On or about June 22, 2015, Petitioner was convicted in the Supreme Court of the State of New York, Kings County, of Criminal Sale of a Controlled Substance in the 3rd Degree (to wit, cocaine), in violation of New York State Penal Law § 220.39(1). (Dkt. 9-1 at ¶ 6). Petitioner was sentenced to a three-year term of imprisonment. (*Id*.).

On July 13, 2015, while incarcerated at the Ulster Correctional Facility, Petitioner encountered agents of the United States Department of Homeland Security ("DHS") assigned to the Criminal Alien Program. (*Id*. at ¶ 7). DHS agents confirmed Petitioner's immigration status and identified him as an alien amenable to removal from the United States. (*Id*.).

On December 2, 2015, DHS issued a Notice to Appear charging Petitioner with being subject to removal from the United States as a nonimmigrant who has been convicted of a controlled substance offense, as a nonimmigrant who has been convicted of an aggravated felony as defined in Immigration and National Act ("INA") § 101(a)(43)(B), *codified* at 8 U.S.C. § 1101(a)(43)(B), and as a nonimmigrant who has remained in the United States for a time longer than permitted. (Dkt. 9-1 at ¶ 8; Dkt. 9-2 at 15). On December 16, 2015, Petitioner was served with the Notice to Appear, which ordered him to appear before an immigration judge ("IJ") at the Downstate Correction Facility in Fishkill, New York, on a date and time to be set, to show cause why he should not be removed from the United States. (Dkt. 15 at ¶ 5).

On December 18, 2015, DHS served Petitioner with a Notice of Hearing informing him that his case had been scheduled for a hearing before an IJ on January 4, 2016, via video conference. (*Id*. at ¶ 6). On December 29, 2015, DHS served Petitioner with another Notice of Hearing, this time informing him that his hearing had been rescheduled to February 29, 2016. (*Id*. at ¶ 7). It is not clear from the record before the Court whether a hearing in fact occurred on February 29, 2016. In any event, that same day, Petitioner's attorney was served with a Notice of Hearing setting a hearing for May 2, 2016. (*Id*. at ¶ 8). This hearing was subsequently rescheduled to June 2, 2016. (*Id*. ¶¶ 9-10). On June 2, 2016, DHS served Petitioner's attorney with a Notice of Hearing stating that Petitioner's case had been scheduled for a hearing on July 15, 2016. (*Id.* at ¶ 11).

Petitioner appeared before the IJ on July 15, 2016, and, through his attorney, conceded he was removable as charged in the Notice to Appear. (Dkt. 1 at ¶ 18). Petitioner

submitted United States Citizenship and Immigration Services Form I-589, Application for Asylum and for Withholding of Removal. (*Id.*). Petitioner sought deferral of removal under the Convention Against Torture. (Dkt. 9-2 at 9). In particular, Petitioner asserted that he fears torture in Ukraine because he is Jewish. (*Id.*).

Additional hearings were scheduled in Petitioner's case. (*See* Dkt. 15 at ¶¶ 12-13). On February 27, 2017, an IJ denied Petitioner's requests for relief from removal and ordered him removed from the United States to Ukraine. (Dkt. 15 at 21). Petitioner appealed this decision to the Board of Immigration Appeals ("BIA"). (Dkt. 9-1 at ¶ 9).

On June 14, 2017, Petitioner completed his sentence with the New York State Department of Corrections and Community Supervision and was taken into DHS custody. (*Id.* at ¶ 10). On June 22, 2017, the BIA issued a decision affirming the decision of the IJ and dismissing the appeal. (Dkt. 9-2 at 8-10).

On June 27, 2017, DHS served Petitioner with a formal Warning for Failure to Depart (DHS Form I-229(a)), as well as an instruction sheet listing actions he was required to complete within 30 days to assist in obtaining a travel document for his removal from the United States. (Dkt. 9-2 at 11). Petitioner refused to sign the Warning for Failure to Depart. (*Id.*).

On July 7, 2017, DHS sent a packet to the Consulate General of Ukraine (the "Consulate") requesting that a travel document be issued for Petitioner's removal. (Dkt. 9-1 at ¶ 13). On July 12, 2017, the Consulate provided to DHS a travel document that was valid until August 10, 2017. (*Id.* at ¶ 14). DHS thereafter made travel arrangements for Petitioner to be removed from the United States to Ukraine. (*Id.*).

Also on July 12, 2017, Petitioner filed a petition for review ("PFR") of the BIA's order with the United States Court of Appeals for the Second Circuit. *See Sigal v. Sessions,* Case No. 17-2197. On July 17, 2017, Petitioner filed a motion for stay of removal with the Second Circuit. (Dkt. 9-1 at ¶ 16). As a result of a forbearance agreement between DHS and the Second Circuit, the filing of Petitioner's motion to stay prevented DHS from executing the order of removal against Petitioner. (*Id.*). Accordingly, DHS cancelled the travel arrangements for Petitioner. (*Id.*).

DHS reviewed Petitioner's custody status in October 2017. (Dkt. 9-2 at 5-6). On October 5, 2017, DHS issued a Decision to Continue Detention in which it informed Petitioner that, in light of his past criminal history, he was considered a threat to the safety and security of the community, and that he was therefore to remain in custody pending his removal from the United States. (*Id.* at 6).

The Second Circuit granted Petitioner's motion for a stay of removal on October 27, 2017. (Dkt. 9-1 at ¶ 20). On February 14, 2018, an IJ conducted a bond hearing pursuant to *Lora v. Shanahan,* 804 F.3d 601 (2d Cir. 2015), *vacated* 138 S. Ct. 1260 (2018). (*Id.* at ¶ 21). The IJ determined that the immigration court lacked jurisdiction to determine bond for Petitioner because he was subject to a final order of removal. (Dkt. 9-2 at 3-4). Petitioner appealed the IJ's decision to the BIA, which affirmed without opinion on May 25, 2018. (*Id.* at 2).

Petitioner's PFR remains pending before the Second Circuit as of the date of this Decision and Order, with the next round of briefing due on November 26, 2018.

# DISCUSSION

## I.   Motion for Evidentiary Hearing

### A.   Legal Standard

"A district court has broad discretion to hear further evidence in habeas cases." *Nieblas v. Smith*, 204 F.3d 29, 31 (2d Cir. 1999). "The decision as to whether an evidentiary hearing is warranted is . . . consigned to the district court," *Bolarinwa v. Williams*, 593 F.3d 226, 232 (2d Cir. 2010), though the Second Circuit has noted that such hearings are particularly useful where the factual record is limited (*id.*); *see also Crawford v. Artuz*, 165 F. Supp. 2d 627, 633 (S.D.N.Y. 2001) (in a habeas case, the Court "has discretion to order an evidentiary hearing *where the material facts are in dispute*") (emphasis added). "Although a district court may order an evidentiary hearing if it finds material facts to be in dispute, petitioners applying for a writ of habeas corpus generally are not entitled to such a hearing." *Hall v. Conway*, No. 04-CV-6011L, 2008 WL 2559371, at *2 (W.D.N.Y. June 23, 2008).

### B.   An Evidentiary Hearing is Not Warranted

In this case, although Petitioner has moved for an evidentiary hearing, his submission in support of that motion fails to identify any factual disputes that require resolution. To the contrary, Petitioner's arguments set forth therein—namely, the continued viability of the Second Circuit's reasoning in *Lora*, the impact of *Pereira v. Sessions*, 138 S. Ct. 2105 (2018) on his claim, and the legal significance of his having filed a PFR with the Second Circuit (*see* Dkt. 12 at 1-4)—deal with pure issues of law. Moreover, the salient facts underlying the instant Petition, which the Court has recited

above, are undisputed. Indeed, Petitioner's counsel acknowledged at oral argument that Petitioner was not seeking an evidentiary hearing, but was instead seeking a court appearance to argue the merits of the Petition. As such, Petitioner has failed to demonstrate that an evidentiary hearing is warranted in this case, and his motion seeking such a hearing (Dkt. 12) is denied.

## II.     The Petition

The Petition in this matter challenges the constitutionality of 8 U.S.C. § 1226(c) ("§ 1226(c)"), both facially and as applied to Petitioner.[1] As the Second Circuit explained in *Lora*, § 1226(c) applies where the government seeks removal of a noncitizen and "requires the mandatory detention, for the duration of their removal proceedings, of aliens convicted of certain crimes." 804 F.3d at 608. "An alien who is detained pursuant to § 1226(c) may seek discretionary release from the Head of the Department of Homeland Security if he is a witness, a potential witness, a cooperator, or an immediate family member or close associate of someone who is acting as a witness, potential witness, or cooperator in an investigation into major criminal activity," but "[n]o other category of discretionary release exists under the statute." *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018).

---

[1]     The Petition also argues in the alternative that Petitioner is not being detained pursuant to § 1226(c), but is instead held under 8 U.S.C. § 1231(a)(6). (*See* Dkt. 1 at ¶ 4). However, in his supplemental filing on June 15, 2018 (Dkt. 4), Petitioner acknowledged that this argument was foreclosed by the Second Circuit's decision in *Hechavarria v. Sessions*, 891 F.3d 49, 53 (2d Cir. 2018), and that it is "clear that Petitioner . . . is detained pursuant to Section 1226" (Dkt. 4 at ¶ 3). Petitioner's counsel confirmed at oral argument that § 1226(c) is the operative statutory provision. The Court has therefore not addressed this alternative argument.

Where DHS determines that a noncitizen is subject to mandatory detention under § 1226(c), the noncitizen is informed of the decision and permitted to challenge it in a hearing pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999). *See Demore v. Kim*, 538 U.S. 510, 514 n.3 (2003) ("This '*Joseph* hearing' is immediately provided to a detainee who claims that he is not covered by § 1226(c). At the hearing, the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that [DHS] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.") (internal citation omitted). A noncitizen may appeal an adverse *Joseph* decision to the BIA. In this case, there is no evidence in the record before the Court that Petitioner ever requested a *Joseph* hearing or otherwise contested the applicability of § 1226(c) to his detention.

Petitioner falls within the purview of § 1226(c) as a result of his June 22, 2015 conviction for Criminal Sale of a Controlled Substance in the 3rd Degree. He has accordingly been held in detention throughout the pendency of his removal proceedings.

### A. Petitioner's Facial Challenge to § 1226(c) is Foreclosed by Binding Supreme Court Precedent

Petitioner challenges the facial constitutionality of § 1226(c), asserting that "[f]reedom from imprisonment lies at the heart of the liberty protected by the Due Process Clause" and that "[g]overnment detention under § 1226(c) violates [that] Clause." (Dkt. 1 at ¶ 24). However, Petitioner's facial challenge to the constitutionality of § 1226(c) has already been squarely rejected by the Supreme Court in *Demore*.

In *Demore*, the petitioner, a native of South Korea and lawful permanent resident of the United States, had been convicted of first-degree burglary and "petty theft with priors" under California law, and charged by the Immigration and Naturalization Service ("INS")[2] with being deportable. 538 U.S. at 513. The *Demore* petitioner was detained pursuant to § 1226(c) and challenged the constitutionality of the provision under the Due Process Clause. *Id.* at 523. The Supreme Court rejected his claim, holding that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 530. The *Demore* decision, which is binding on this Court, forecloses Petitioner's facial challenge to the constitutionality of § 1226(c). *See Young v. Aviles*, 99 F. Supp. 3d 443, 452 (S.D.N.Y. 2015) (because *Demore* "upheld Section 1226(c)'s mandatory detention provisions against a facial due process challenge," the only question before the court was whether § 1226(c) was unconstitutional as applied to the individual petition). Accordingly, to the extent the Petition relies on a facial challenge to § 1226(c)'s constitutionality, it must be denied.

**B.** **Petitioner has not Demonstrated that § 1226(c) is Unconstitutional as Applied to Him**

In addition to his facial challenge, Petitioner also argues that § 1226(c) is unconstitutional as applied to him. In particular, Petitioner contends that his detention, which has now extended for almost 17 months (from June 14, 2017, to the present), violates

---

[2]      INS was dissolved by the Homeland Security Act of 2002 and replaced by agencies within DHS, including USCIS, Immigrations and Customs Enforcement, and Customs and Border Patrol. *See Abdi v. Duke*, 280 F. Supp. 3d 373, 384 n.3 (W.D.N.Y. 2017).

due process. For the reasons set forth below, the Court rejects Petitioner's as-applied challenge to § 1226(c).

### 1.    Due Process and § 1226(c) Detention

The law regarding detention under § 1226(c) is somewhat unsettled. In *Lora*, the Second Circuit considered an as-applied challenge to § 1226(c) and joined the Third, Sixth, and Ninth Circuits in concluding that, to avoid "serious constitutional concerns," § 1226(c) must be read to include a temporal limitation on detention. 804 F.3d at 613. The *Lora* court reasoned that, under *Demore*, "for detention under the statute to be reasonable, it must be for a brief period of time." *Id.* at 614. As such, the *Lora* court adopted the holding of the Ninth Circuit in *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013), that "an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention." *Id.* at 1131. The Second Circuit further held that the detainee "must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." *Lora*, 804 F.3d at 616 (quoting *Rodriguez*, 715 F.3d at 1131).

Subsequently, on February 27, 2018, the Supreme Court issued *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), in which it rejected the Ninth Circuit's analysis of § 1226(c) and the bright-line, six-month rule adopted in accordance therewith. The *Jennings* Court held that it was not a "plausible statutory construction" to interpret § 1226(c) "to include an implicit 6-month time limit on the length of mandatory detention," and concluded that "§ 1226(c) mandates detention of any alien falling within its scope and

that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Id.* at 846-47. However, because reversal of the underlying Ninth Circuit decision was mandated on statutory grounds, the *Jennings* Court expressly declined to reach the petitioner's constitutional claims on the merits, instead remanding to the Court of Appeals for consideration of those claims in the first instance. *Id.* at 851.[3]

On March 5, 2018, in light of its decision in *Jennings*, the Supreme Court granted *certiorari* in *Lora*, vacated the judgment in that matter, and remanded the matter to the Second Circuit for further consideration. *See Shanahan v. Lora*, 128 S. Ct. 1260 (2018). On remand, the Second Circuit dismissed the case as moot because the petitioner in that matter had been granted a cancellation of removal. *See Lora v. Shanahan*, 719 F. App'x 79, 80 (2d Cir. 2018).

Following *Jennings*, courts in the Second Circuit have reached differing conclusions regarding as-applied constitutional challenges to immigration detention like Petitioner's. In this case, for the reasons discussed below, the Court finds that, under the circumstances of this case, Petitioner's right to due process has not been violated. Accordingly, the Court need not and does not offer an opinion on the precise contours of the process that must be afforded to a noncitizen detained under § 1226(c).

---

[3]     On remand, the Ninth Circuit ordered additional briefing. *See Rodriguez v. Marin*, No. 13-56755, Dkt. 152 (9th Cir. Apr. 17, 2018). Oral argument was held on October 29, 2018 (*id.* at Dkt. 240), but no decision has been issued.

### 2.    Petitioner has not been Deprived of Due Process

Having reviewed the record in this matter and considered the arguments set forth by both sides, the Court concludes that Petitioner has not been deprived of due process.  In reaching this conclusion, the Court has taken into account all of the factual circumstances, including the procedural status of this case (in particular, the fact that Petitioner is appealing a final order of removal and that, prior to his filing of a PFR and associated request for a stay, DHS had made travel arrangements for Petitioner to be removed from the United States to Ukraine), the fact that Petitioner's custody status was reviewed in October 2017 and an individualized determination that Petitioner should remain in custody was made, and the fact that Petitioner is detained under § 1226(c) and therefore belongs to "a class of presumptively unbailable aliens whose detention Congress had deemed to be necessary and reasonable." *Martinez v. Decker*, No. 18-CV-6527 (JMF), 2018 WL 5023946, at *4 (S.D.N.Y. Oct. 17, 2018).

The Court notes as an initial matter that numerous courts in the Second Circuit, relying on *Doherty v. Thornburgh*, 943 F.2d 204 (2d Cir. 1991), have found that whether a delay in removal is attributable to a petitioner's own litigation strategy is a key consideration in considering due process challenges.[4]  In *Doherty*, the petitioner was a

---

[4]    Certain courts in the Second Circuit have articulated various additional factors that should be considered in assessing a due process challenge to detention under § 1226(c). *See, e.g., Vallejo v. Decker*, No. 18-CV-5649 (JMF), 2018 WL 3738947, at *3 (S.D.N.Y. Aug. 7, 2018) (factors include "(1) the sheer length of the proceedings; (2) which party bears responsibility for the prolonged detention; (3) whether the continued duration of the detention is finite or near conclusion; and (4) the interests served by continued detention.") (quotations omitted); *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10-12 (S.D.N.Y. May 23, 2018) (factors include "the length of time the alien has already

citizen of the United Kingdom who had been held in custody without bail for eight years pending resolution of an extradition proceeding, due to his own litigation strategy. *Id.* at 205-208. The Second Circuit found that no due process violation had occurred, holding that although the petitioner's "litigation strategy [was] perfectly permissible," he could "not rely on the extra time resulting therefrom to claim that his prolonged detention violates substantive due process." *Id.* at 211.

In accord with *Doherty*, courts in this Circuit considering *habeas corpus* claims related to § 1226(c) have found that "[d]elays attributable to normal consideration of an alien's appeal of adverse decisions do not render unreasonable the consequent delay of his ability to gain release into his home country." *Hylton v. Shanahan*, No. 15-CV-1243-LTS, 2015 WL 3604328, at *6 (S.D.N.Y. June 9, 2015) (finding that detention without bail for approximately two years under § 1226(c) was not "so unreasonably long as to violate [the petitioner's constitutional due process rights"); *see also Baker v. Johnson,* 109 F. Supp. 3d 571, 586 (S.D.N.Y. 2015) (11-month detention under § 1226(c) was not unreasonable where the proceedings had been "extended by appeals or by motion practice initiated by Petitioner"); *Johnson v. Orsino*, 942 F. Supp. 2d 396, 410 (S.D.N.Y. 2013) (15-month detention not unreasonable where "the sole reason that [the petitioner] continues to be in

---

been detained," "whether the alien is responsible for the delay," "whether the detained alien has asserted defenses to removal," "whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable," and "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention") (quotation omitted). The Court has not explicitly walked through each of these factors in its decision but has nonetheless considered them in one form or another in reaching its conclusion that Petitioner has not established a due process violation.

. . . custody is the fact [he] chose to appeal the IJ's removal order"); *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 197 (W.D.N.Y. 2010) (the petitioner's detention under § 1226(c) "for more than three years, all of which time is attributable to his attempt to appeal his final order of removal, without a bond hearing" did not violate the Due Process Clause). While this well-established case law "in no way suggests that a petitioner should be punished or blamed for seeking additional review of administrative and judicial decisions; he has every right to do so," it also acknowledges that "having that right does not mean it may be exercised without consequence." *Manley v. Delmonte*, No. 17-cv-953, 2018 WL 2155890, at *2 (W.D.N.Y. May 10, 2018); *see also Baker*, 109 F. Supp. 3d at 586 ("Although [Petitioner] indisputably has every right to seek any relief from deportation for which he may be eligible, delay caused by his actions does not make continued detention unreasonable or unjustified.") (quotation omitted).

In this case, as in the cases collected above, Petitioner's continued detention is attributable to his decision to appeal the IJ's removal order and to seek a stay of his removal in connection therewith.[5] Moreover, and as in the cases discussed above, "there is no indication that [Petitioner's] continued detention . . . will last indefinitely or for a lengthy period of additional time." *Baker*, 109 F. Supp. 3d at 586 (internal quotation omitted). To the contrary, Petitioner's detention will come to an end, one way or another, upon the disposition of his appeal. *See Luna-Aponte*, 743 F. Supp. 2d at 197 (noting that there was

---

[5]     The Court notes that, under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Petitioner's removal from this country would not have prevented him from continuing to litigate his PFR. *See Nken v. Holder*, 556 U.S. 418, 423 (2009).

"absolutely no impediment to Petitioner's eventual deportation" if he ultimately lost his appeal). As the Court has previously noted, DHS was on the verge of removing Petitioner to Ukraine (and thereby ending his detention) when he commenced his PFR, forcing the cancellation of those travel plans.

The Court further notes that Petitioner has made no showing to this Court regarding the potential merits of his PFR, which cuts against any finding of a due process violation. *See Johnson*, 942 F. Supp. 2d at 411 (finding 15-month detention justified in part because "[a]n IJ has already ordered [the petitioner] removed, and [the petitioner] has made no showing that his appeal to the BIA has merit"); *Luna-Aponte*, 743 F. Supp. 2d at 193 (finding detention for more than three years permissible in part because the petitioner merely "offer[ed], in conclusory fashion, that his appeal to the Second Circuit ha[d] merit," and did not "explain[] why the BIA's determination was erroneous in any event"); *cf. Young v. Aviles*, 99 F. Supp. 3d 443, 453-54 (S.D.N.Y. 2015) (noting that "an application for cancellation of removal is not a challenge to removability, but rather a request for discretionary relief" and finding that because the petitioner "provid[ed] no detail," it was "impossible for the Court to conclude that his asylum application represents a substantial challenge to removal"). For all these reasons, the Court finds that, under the circumstances of this particular case, the delay associated with Petitioner's litigation of his PFR does not render his continued detention constitutionally unreasonable.

The procedural posture of Petitioner's case distinguishes it from post-*Jennings* cases in this Circuit that have found a due process violation with respect to detention under § 1226(c). In *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266 (S.D.N.Y.

- 15 -

May 23, 2018), the petitioner's removal proceedings were ongoing, and his case had "slipped through the cracks" due to the fact that his counsel's request for his file had "languished for months, forgotten." *Id.* at \*11. Similarly, in *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108 (S.D.N.Y. July 25, 2018), the court noted that the petitioner's removal proceedings had "just begun" and "could continue for a significant additional period of time," and distinguished cases that were "already in the appeal stage of their proceedings." *Id.* at \*8. Moreover, the petitioner in *Hernandez* had set forth specific evidence showing that he had "nonfrivolous legal arguments on appeal that he is not removable as charged." *Id.* at \*9.

In *Vallejo v. Decker*, No. 18-CV-5649 (JMF), 2018 WL 3738947 (S.D.N.Y. Aug. 7, 2018), the court explained that "the principal factor considered in constitutional review of detention pending removal proceedings is the degree to which the proceedings have been prolonged by unreasonable government action." *Id.* at \*3 (quotation omitted). There, the petitioner's case was still pending before the IJ, he had demonstrated that delays by the government accounted for more than eleven months of the detention, and he had demonstrated that his petition for withholding of removal was "plainly colorable." *Id.* at \*4. In *Cabral v. Decker*, No. 18 CIV. 4823 (JGK), 2018 WL 4521199 (S.D.N.Y. Sept. 21, 2018), the petitioner was challenging whether he even fell under the purview of § 1226(c), and his removal proceedings were ongoing. *Id.* at \*2.

In sum, the post-*Jennings* cases in which courts in this Circuit have found due process violations related to lengthy detentions under § 1226(c) have involved petitioners who were still in the early stages of their immigration proceedings, who had demonstrated

that their arguments against removability were potentially meritorious, or whose proceedings had been unreasonably delayed by the government. *See also Dukuray v. Decker*, No. 18 CV 2898 (VB), 2018 WL 5292130, at *4 (S.D.N.Y. Oct. 25, 2018) (finding due process violation where the petitioner was still awaiting a determination from the immigration judge and "the immigration court [was] responsible for the majority of the delay"); *Lett v. Decker*, No. 18 CIV. 4302 (JCM), 2018 WL 4931544, at *1 (S.D.N.Y. Oct. 10, 2018) (finding due process violation where no merits decision had been issued and immigration judge "had neglected to assign the case to a law clerk, and thus no work had been done on the decision"); *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *5 (S.D.N.Y. Aug. 20, 2018) (finding due process violation where petitioner was still awaiting a merits hearing and where the government was responsible for the delay, having failed to procure a needed translator for an earlier-scheduled merits hearing). Petitioner has not shown that any of these circumstances are present here, nor has he cited any cases in which a court has found a due process violation in the absence of at least one of these considerations.

Moreover, in this case, an individualized review of Petitioner's detention has been conducted. In particular, in October 2017, DHS reviewed Petitioner's custody status and determined that he should not be released. (Dkt. 9-2 at 5-6). The Decision to Continue Detention provided to Petitioner set forth specific, individualized considerations supporting the decision not to release him from custody. (*Id.*). Specifically, DHS noted Petitioner's criminal history, as well as the fact that while detained at the Buffalo Federal Detention Facility, he had been sanctioned for fighting and refusing to obey staff orders.

(*Id*. at 6). DHS accordingly found that Petitioner would pose a potential threat to the safety and security of the community if released. (*Id*.). As such, it is not the case that Petitioner has been held without any process. While this process may not have been the equivalent of the bond hearing that Petitioner seeks, *Jennings* makes clear that the language of § 1226(c) does not require such a hearing, and the Court concludes, for the reasons previously discussed, that under the circumstances of this case, Petitioner has not demonstrated that the Due Process Clause imposes such a requirement.

The Court acknowledges that Petitioner has been in custody for more than 16 months, and that "detention that has lasted longer than six months is more likely to be 'unreasonable,' and thus contrary to due process, than detention of less than six months." *Sajous*, 2018 WL 2357266, at *10 (collecting cases). However, "the sheer length of the proceedings is not alone determinative of reasonableness." *Debel v. Dubois*, No. 13 CIV. 6028 LTS JLC, 2014 WL 1689042, at *5 (S.D.N.Y. Apr. 24, 2014) (upholding detention under § 1226(c) that was likely to exceed two years and noting that "delays attributable to normal consideration of an alien's appeal of adverse decisions do not render unreasonable the consequent delay of his ability to gain release into his home country"). In this case, while the length of Petitioner's detention may support his claim of a due process violation, all the other surrounding circumstances, as discussed above, demonstrate that no such violation has occurred. The Court therefore finds that Petitioner has not, on the current record, established his entitlement to the relief he seeks (*i.e.* immediate release on either his own recognizance or on a bond). *See Rosario v. Ercole*, 582 F. Supp. 2d 541, 550

(S.D.N.Y. 2008), *aff'd*, 601 F.3d 118 (2d Cir. 2010) ("The petitioner bears the burden of proof to establish a constitutional violation in a habeas corpus proceeding.").

### C.    Jurisdiction of the Immigration Court

In his motion for an evidentiary hearing, Petitioner advanced the argument that his detention is unlawful under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), because the Notice to Appear with which he was served did not designate the time and place of the removal proceedings and, accordingly, the IJ lacked jurisdiction.  (*See* Dkt. 12 at 3-4). As a threshold matter, it is not clear that this Court has jurisdiction to hear this argument.  It is well-established that if a noncitizen "seeks review of a final order of removal, regardless of how the . . . claim for relief is styled, jurisdiction rests exclusively with the appropriate court of appeals." *Scott v. Napolitano*, 618 F. Supp. 2d 186, 191 (E.D.N.Y. 2009).  Here, because Petitioner's argument based on *Pereira* relates to the validity of the immigration proceedings and subsequent issuance of the final order of removal, it is at least arguably a matter that would need to be raised in Petitioner's PFR before the Second Circuit.

Moreover, and in any event, Petitioner's *Pereira* argument lacks merit.  The Supreme Court's decision in *Pereira* addressed the "narrow question" of what must be contained in a notice to appear to trigger "the so-called 'stop-time rule' set forth in [8 U.S.C. § 1229b(d)(1)(A)]."  138 S.Ct. at 2109-10.  Under 8 U.S.C. § 1229b(b)(1), a nonpermanent resident who is subject to removal proceedings and has been continuously physically present in the United States for 10 years "may be eligible for a form of discretionary relief known as cancellation of removal." *Id.*  However, under the stop-time rule, the "period of continuous physical presence is deemed to end . . . when the alien is

served a notice to appear under section 1229(a)." *Id.* (internal quotation omitted). Section 1229(a) identifies several pieces of information that must be set forth in a notice to appear, including "[t]he time and place at which the [removal] proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). The *Pereira* Court considered whether a document that was labeled a "notice to appear" but failed to specify either the time or place of the removal proceedings triggers the stop-time rule and concluded that it does not, based on "[t]he plain text, the statutory context, and common sense." 138 S.Ct. at 2110.

Petitioner urges this Court to read *Pereira* for the broad proposition that a notice to appear (such as the one served on Petitioner in this case) that states that the time and place of the removal proceedings are to be determined fails to vest jurisdiction with the immigration court. (*See* Dkt. 12 at 3). Nothing in *Pereira* supports such a conclusion. *See Ramat v. Nielsen*, 317 F. Supp. 3d 1111, 1117 (S.D. Cal. 2018) ("Nothing in *Pereira* suggests that the failure to specify the date and time of removal proceedings in 8 U.S.C. § 1229(a) voids the commencement of removal proceedings"). The *Pereira* Court repeatedly emphasized the narrowness of the question facing it (*see* 138 S.Ct. at 2113), and explained that the reference to § 1229(a) in § 1229b(d)(1)(A) mandated the conclusion that, to trigger the stop-time rule, a noncitizen must be provided with all of the information set forth therein (*id.* at 2119). The textual concerns underlying the *Pereira* decision do not demonstrate that the IJ in this case lacked jurisdiction.

Moreover, unlike the petitioner in *Pereira*, who "never received notice of the time and date of his removal hearing," 138 S.Ct. at 2112, Petitioner in this case was served with a Notice of Hearing setting forth the time and place of the removal proceedings only two

days after being served with the Notice to Appear. (*See* Dkt. 15 at ¶¶ 5-6). The Second Circuit has expressly held that a notice to appear that indicates the date and time of the removal hearing are to be determined may be supplemented by subsequent service of a notice of hearing setting forth such date and time. *See Guamanrrigra v. Holder*, 670 F.3d 404, 411 (2d Cir. 2012) (service of a notice to appear and a subsequent notice of hearing, "in combination, satisfied the notice requirements of INA § 239(a)(1), 8 U.S.C. § 1229(a)(1)"). *Pereira*, which addressed a situation wherein the petitioner was never provided with notice of the time and date of the removal proceedings, does not abrogate *Guamanrrigra*, which is binding on this Court. Accordingly, Petitioner has failed to demonstrate that the IJ in this case lacked jurisdiction and is not entitled to relief on this basis.

## CONCLUSION

For the foregoing reasons, the Court denies Petitioner's motion for an evidentiary hearing (Dkt. 12), and the Petition (Dkt. 1) is denied and dismissed. The Clerk of Court is instructed to close the case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: November 7, 2018
      Rochester, New York